YATRON, P.J,
Charles Thomas (“defendant”) is charged in the above-captioned case with persons not to possess firearms[1]. On October 16, 2014, defendant filed an omnibus pretrial motion in the nature of a motion for suppression of evidence. Hearing was *430 held December 17, 2014, and the matter is now ripe for disposition.
FINDINGS OF FACT
1. At the time of these events, defendant was under the supervision of the Berks County Adult Probation & Parole Office for a retail theft offense.
2. Probation Officer Ed Keglovits works for the County of Berks in the juvenile probation department.
3. Keglovits received information that there was a firearm at defendant’s residence. He received this information from the parent of another juvenile that he supervised.
4. At the time, Keglovits was supervising the son of defendant’s girlfriend.
5. Keglovits relayed the information to the adult probation office on April 17, 2014. Specifically, he informed probation officer Josiah Fisher, who was supervising defendant, and probation officer Michael Futrick, who was supervising defendant’s girlfriend, Kristina Adamski.
6. On November 28, 2012, Futrick and defendant reviewed and signed a document pertaining to his supervision.
7. Rule seven of the document reads: “I shall not own, possess, use, sell or have under my control firearms, ammunition, imitation, look-alike firearms, weapons capable of propelling a projectile or any other deadly weapons. Hunting is prohibited. I shall not own or have in my possession body armor of any type.”
*431 8. Rule eight of the document reads: “In consideration of being granted probation or parole, I give consent to search of my person, residence or property upon reasonable suspicion that I may have violated or I am in violation of conditions of my probation or parole. Any item, the possession of which constitutes a violation, shall be subject to seizure and may be used as evidence in the violation process.”
9. Futrick spoke with his supervisor, Nick Volo, and received permission to search the residence for the firearm.
10. The residence was located at 515 South 17th and a Half Street in the City of Reading.
11. On April 21, 2014, Futrick, Fisher, and parole officer Carlo DeAngelo went to the house to conduct the search.
12. After knocking on the door and being let into the residence, defendant and Adamski were taken into custody. Other juveniles were also present, and they were compliant.
13. Adamski provided the location of the firearm, a Ruger pistol, which Fisher recovered from the third floor of the residence.
14. Adamski admitted that it was her gun.
15. Once they located the firearm, the officers conducted a search of the rest of the residence.
16. In defendant’s bedroom, DeAngelo located a cell phone. Defendant admitted it was his.
17. DeAngelo began looking through the pictures contained on the cell phone, in search of any image of *432 defendant possessing the firearm.
18. On several previous occasions, DeAngelo had searched a cell phone and found evidence pertaining to firearms violations.
19. DeAngelo found two incriminating images of defendant posing with the firearm.
20. Based on this information, criminal investigator Adam Linderman of the Reading Police Department applied for a search warrant to examine the contents of the phone. The search warrant was approved on April 30, 2014. Subsequently, criminal investigator George Taveras of the Reading Police Department extracted the two photographs from the phone.
CONCLUSIONS OF LAW
Defendant argues that the images of him holding a gun were obtained in violation of his rights under Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the United States Constitution. For the reasons discussed herein, we find that the Commonwealth has met its burden of showing that the items were lawfully seized.
Defendant’s petition principally relies on the United States Supreme Court’s recent decision in Riley v. California, 134 S.Ct. 2473 (2014). In Riley, the court held that the warrantless search of a cell phone seized incident to arrest was unconstitutional:
Modem cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life. The fact that technology now allows an individual *433 to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple — get a warrant.
Id. at 2494-95 (citation and internal quotation marks omitted). The holding of Riley, however, is not directly applicable to this case. See United States v. Dahl, — F.Supp. 3d — (E.D. Pa. Dec. 3, 2014) (citations omitted) (“Permitting the contents of a cell phone of a probationer, who has limited expectations of privacy, to be searched based on reasonable suspicion and without a warrant . . . does not open the floodgates to massive invasions of privacy without judicial oversight. Thus, the concern of the Supreme Court in Riley does not exist here.”).
The rights of an offender currently on probation or parole are necessarily different than those belonging to an unsupervised citizen. Pennsylvania law explicitly grants probation officers some latitude with regards to the warrantless search of an offender or his property. An officer may execute a personal search of an offender “if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision.” 42 Pa.C.S.A. §9912(d)(l) (i). “A property search may be conducted by an officer if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.” Id. at §9912(d)(2). A property search requires the prior approval of a supervisor, “absent exigent circumstances.” Id. at *434 §9912(d)(3). Section 9912 also outlines the criteria for the existence of reasonable suspicion:
(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:
(i) The observations of officers.
(ii) Information provided by others.
(iii) The activities of the offender.
(iv) Information provided by the offender.
(v) The experience of the officers with the offender.
(vi) The experience of officers in similar circumstances.
(vii) The prior criminal and supervisory history of the offender.
(viii) The need to verify compliance with the conditions of supervision.
Id. at §9912(d)(6).
In the instant case, the probation officers followed proper protocol and had ample reasonable suspicion that justified the search of defendant’s cell phone. The chain of events described in the findings of fact, supra, implicate several prongs of Section 9912(d)(6). The probation & parole office received information that there was a firearm at defendant’s residence. Defendant was aware that he was not allowed to possess firearms and that he may be subject to a warrantless search, subject to reasonable suspicion. *435 During the search, another resident, Adamski, provided the location of the firearm, which was recovered by one of the officers. Notwithstanding Adamski’s statement that the gun was hers, the officers now had ample reasonable suspicion that defendant may have violated the terms of his supervision. The officers next located a cell phone, which defendant admitted was his. Officer DeAngelo had previously found evidence of firearms-related violations on cell phones, so he began looking through the photographs contained on the device. DeAngelo’s suspicions were well-founded, as he found two incriminating images of defendant posing with a prohibited firearm.
Based on these events, we conclude that the officers had sufficient reasonable suspicion to justify the warrantless search of defendant’s cell phone. This reasonable suspicion was founded on information provided by others, information provided by residents during the search, the recovery of the firearm during the search, and the experience of the officers in similar circumstances. Given the presence of the firearm in defendant’s residence, the officers also had a strong need to verify his compliance with the terms of his supervision. We additionally note that the officers received permission from their supervisor before executing the search of defendant’s residence, thereby comporting with Section 9912(d)(3).
Based upon the findings of fact and conclusions of law contained herein, we believe that the Commonwealth has demonstrated that the challenged evidence is admissible. The initial search was lawful, and therefore the pictures later extracted from the cell phone cannot constitute “fruit of the poisonous tree.” Therefore, defendant’s motion for suppression of evidence is denied.

. 18 Pa.C.S.A. §6105(a)(l).